Curran, Dennis J., J.
The defendants UMass Memorial Medical Center, UMass Memorial Medical Group, and UMass Memorial Realty, Inc. have moved for partial summary judgment on liability, seeking to invoke the $20,000 statutory cap on tort liability afforded by the charitable immunity statute, G.L.c. 231, §85K. The plaintiffs oppose that motion.
For the foregoing reasons, the defendants’ motion is ALLOWED.
FACTS
On February 11, 2000, Ann Marie Lawrence fell in the parking lot of medical offices located at 67 Belmont Street in Worcester. She fractured her right knee, tore both her left and right rotator cuffs, and dislocated her left shoulder. She alleges that the defendants failed to properly maintain the parking lot, permitting an unnatural accumulation of snow and ice.
The plaintiffs concede that all three defendants are charitable corporations (see page 3 of their memorandum). UMass Memorial Medical Center, Inc. maintains and operates a charitable hospital; UMass Memorial Medical Group was a predecessor corporation to one organized to provide health care services to the Medical Center’s patients; and finally, UMass Memorial Realty, Inc.’s mission is to promote the interests of the Medical Center by, among other things, managing real estate for its benefit.
DISCUSSION
A charitable corporation may be liable only up to $20,000 for a tort liability in the course of activity undertaken to accomplish its charitable purpose. There is little doubt — and indeed, the plaintiffs concede the point — that the defendants are charitable organizations. Additionally, the realty trust’s management activities further the activities of the medical group, i.e. in providing access to patients to see their physicians.
The plaintiffs seek to distinguish Connors v. Northeast Hospital Corporation, 439 Mass. 469, 477 (2003), which upheld the statutory cap as to a corporation which owned the property but leased it to a condominium association. In that case, the Supreme Judicial Court stated:
. . . [Undertaking snow removal “accomplished directly” the charitable purposes of a charitable organization.
The snow removal activities facilitated the care and treatment of the sick, providing a convenient means for access, i.e., parking, to patients seeking treatment.
The plaintiffs claim that Connors is inapplicable here because in that case the defendant owner-hospital leased the property to a condominium association, but retained use of the parking lot for its employees and patrons. Here, however, the realty trust sold off its interest in the property. But the plaintiffs’ effort to distinguish Connors must fail. The point is not who owns the property, but rather whether the activity engaged in by the charity furthers its charitable purpose or that of some other charitable enterprise.
An effort to remove or treat snow and ice clearly facilitates patient access to the physicians’ group charitable organization, and that obviously furthers its charitable purposes. Moreover, the realty trust activities cannot plausibly be claimed to be “primarily commercial” so as to render the statutory liability cap unavailing. The realty trust did not operate a snow *544 removal business; rather, its work was incidental to, and supportive of, the charity’s purpose.
CONCLUSION
The three defendants are charitable organizations; their activities here furthered their organization’s stated purposes; the snow/ice removal or treatment was not “primarily commercial.” The legislature has crafted a tort liability statute to allow charitable organizations to operate free from financially-crushing tort liability determinations. Here, the purpose of the charitable organization was being furthered by the removal of snow and ice: this benefits the patients who desire medical treatment, and the physicians who labor to provide it.
ORDER
For the foregoing reasons, the defendants’ motion for partial summary judgment as to liability is ALLOWED; the statutory cap of $20,000 applies to any tort liability determination against each moving party-defendant.